HAZEL BOYER, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF KERMIT B. WILLIAMS, RESPONDENT, v. GREAT ATLANTIC AND PACIFIC TEA COMPANY, A CORPORATION, APPELLANT.

Submitted December 10, 1923—Decided May 19, 1924.

The plaintiff's intestate, a boy seven years of age, was stealing a ride on the rear or inside step of a trolley car which was proceeding northwardly. A truck was being driven southwardly on a parallel track. As the truck was passing the car the boy jumped from the car upon the track upon which the truck was being driven, stumbled, fell, and the front wheel of the truck passed over him, causing death—*Held*, error to have submitted the case to a jury, as the facts of the case failed to disclose negligence on the part of the driver of the truck.

---

On appeal from the Supreme Court.

For the appellant, *Carr & Carroll.*

For the respondent, *William C. French* and *Samuel T. French.*

The opinion of the court was delivered by

KATZENBACH, J.    This is an appeal from a judgment entered in the Supreme Court upon a verdict rendered at a trial at the Camden Circuit.    The action was instituted under the Death act to recover damages for the death of Kermit B. Williams, a boy about seven years of age.    The evidence presented showed that on October 27th, 1919, at about two o'clock in the afternoon, the defendant below was the owner of a large and heavy-covered truck which was being drawn by a team of heavy draft horses driven by a servant of the defendant.    The truck was proceeding, at the time of the occurrence of the accident out of which this action arose, southwardly on Mount Ephraim avenue, in Camden, between Kaighn avenue and Liberty street.    On this part of Mount Ephraim avenue there is a trolley track and siding located in the centre of the highway.    The siding is of such length as to virtually constitute a double-track street railway between Kaighn avenue and Liberty street. The tread of the truck was wider than the gauge of the track. The left-hand wheels of the truck were running in the easterly rail of the southbound track and the right-hand wheels extended about a foot beyond the westerly rail.    The horses were being driven at a speed of between two and three miles per hour.    A trolley car entered the switch at Liberty street, and was proceeding northwardly on the switch or northbound track towards Kaighn avenue at a speed of approximately six miles per hour.    As the heads of the horses pulling the defendant's truck were about opposite the middle of the trolley car, two boys, who were stealing a ride by hanging on the rear of the trolley car, or on the inside rear step of the car which, although a vestibuled car, was not of that type which folded up the step by the closing of the door, jumped from the car upon the southbound track in front of the defend-

ant's truck. The boy companion of Williams jumped first
and passed over the track in safety. Williams jumped, stum-
bled, and fell. The front wheel of the truck passed over his
body before the truck was stopped, causing injuries from
which Williams died. The driver of the truck sat upon an
elevated seat over which was a hood with side curtains. He
had seen the boys jump on the rear of the car at Liberty
street. He testified he was looking ahead but did not again
see them. His attention was called to the accident by a man
upon the sidewalk calling to him. Upon these facts a mo-
tion to nonsuit and to direct a verdict for the defendant were
made and denied. The ground of both motions was lack of
evidence of the negligence of the defendant. Exceptions
were duly taken. The appeal is based upon these exceptions.

The sole question involved is whether there is in the case
any evidence of negligence which warranted the submission
of the case to the jury. The learned trial judge in his
charge said: "This case I am submitting to you with some-
what of reluctance. * * * After a considerable amount
of reflection, I have reached the conclusion that there is but
one phase of this case that it is proper for me to submit to
you on the question of negligence, and that is, the question
of attention by the driver of this horse and wagon. There
is testimony in the case from which you could infer that the
boy stepped off when the heads of the horses were about the
middle of the car. The driver says he did not see them at
that point at all, and it is argued to you that if he had been
giving attention he would have seen them both on the car and
as they stepped off. The testimony in the case is that the
vehicle was going very slowly, indeed, two and a half to three
miles an hour. One of the witnesses testified that when the
boy jumped off or got off the wagon was fifteen or twenty
feet away. That is qualified very much by the statement
that he made. The conductor, however, says that the horses'
heads were about the centre of the car, and the question I
am going to submit to you is whether or not there was a
want of attention at that time by the driver which consti-
tuted negligence, and whether, if it did constitute negli-

gence, that negligence was the cause of the boy's death. That would involve, of course, the question of whether attention, under the circumstances, would have saved the boy. Now, the distance from the centre of the car to the rear is, obviously, a short distance, if you find that to be the fact. There was other testimony in the case which would indicate that that is not true at all, that the boys got off from behind the car, but if that be a true statement of it, it would indicate, of course, a very short distance in which to control a vehicle.

"Counsel has argued the case to you upon another theory, and that is that it was the driver's duty to anticipate that these boys would get off on the side of the car. Careful thought of the case has compelled me to reach the opposite conclusion, that if these boys were in a place of safety, so far as he was concerned—one of them ten years of age and the other approaching seven—that he was not obliged to anticipate that they would jump off the car in front of his moving vehicle. The rule of the law is that one has a right to assume, in the absence of some indication to the contrary, that another is going to use reasonable care, and until something to indicate the contrary appears, he may continue with that assumption. So, that the case resolves itself down to the single question, in the first place, where the boys were; if the boys were behind the car, and jumped off from there, that is the end of the case; there is no liability. If they were on the step and stepped off sufficiently far ahead for the driver of the wagon to control his team in the exercise of reasonable care if he had been giving proper attention, then, in that event, you might find that it was the negligence of the driver in operating his vehicle, and in that event only."

From this portion of the charge it will be observed that the court left to the jury the question of whether or not the driver of the truck was guilty of inattention to his duties by failing to see Williams jump from the trolley car, and also the further question did Williams jump so far in front of the truck that the driver could have stopped the truck before running over the boy if he had seen him. We have reached

the conclusion that the trial court erred in leaving these questions to the jury for determination. The proper disposition of the case, in our opinion, was either to have nonsuited the plaintiff or directed a verdict for the defendant. The duty of the driver was to use the care of an ordinary prudent person. In driving upon a highway a driver's duty is to make observations as to possible or probable dangers from all directions. In so doing, it necessarily follows that a driver cannot at all times direct his attention to a single object. There must be a time when his attention will be drawn, at least, momentarily from one object to another. The charge of the court made it obligatory upon the driver to keep Williams, or the car, under his observation from the time he saw the boy jump on the car until the car had passed the truck, for otherwise the jury could not have found that the driver had time to stop the truck after Williams jumped, as they must have found in order to render the verdict they did. To support the trial judge's theory it is necessary to hold that it was the driver's duty to anticipate, not only that the deceased would jump off the car on the wrong side, but also that he would jump at such a time as to make an accident inevitable, unless the driver saw the boy jump and could have stopped his horses in time to have prevented the accident. This assumes that the driver could not, even for an instant, take his eye from the boy or the car, if the boy could not be seen, without being guilty of negligence. The driver was not obliged to assume that Williams would jump off on the wrong side of the car in front of a moving truck in the absence of any indication to the contrary, and there is in the evidence nothing to indicate an intention on the part of Williams to do so. What could the driver have done to have prevented the accident? He could not have prevented it by driving his truck farther to the right in the street, assuming that there was space to do so, because the boy, in attempting as he did to reach the sidewalk, might even then have been struck by the truck. The only way to have absolutely prevented the accident would have been for the driver to have stopped his truck before it approached the car, and

to keep it stopped until the car had passed. This course of conduct would not have been, in our opinion, the conduct of an ordinarily prudent person. It would have been the conduct of a person of extraordinary prudence. This is above the standard of care which the driver of the truck was obliged, under the circumstances, to use. In view of the fact that the truck was proceeding in a proper place in the highway; that it was being driven at a moderate rate of speed; that the deceased jumped off the wrong side of the car in front of a moving vehicle; that the driver was not obliged to assume that the boy would jump while the truck was passing the car, we are of the opinion that the case lacked such evidence of negligence on the part of the driver of the truck as to warrant the submission to the jury of the question of the defendant's negligence.

Negligence is a fact which must be proved. It will not be presumed. *McCombe* v. *Public Service Railway Co.,* 95 *N. J. L.* 187. Negligence cannot be inferred from the mere happening of the accident itself. *Kingsley* v. *Delaware, Lackawanna and Western Railroad Co.,* 81 *Id.* 536. To measure negligence in the present case, the standard of an extraordinarily prudent person cannot be used as a yardstick.

The judgment will be reversed and a *venire de novo* awarded.

*For affirmance*—KALISCH, J.   1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, BLACK, KATZENBACH, CAMPBELL, WHITE, GARDNER, VAN BUSKIRK, CLARK, JJ.   12.